TOM AND W. K. WARD v. R. A. GREEN, GUARDIAN, ET AL.

No. 280.

| 88 | 177 |
| 92 | 501 |

**1. Election of Remedies.**

Where a party who has a choice of remedies upon a cause of action pursues one of them to final judgment, he thereby makes an election by which he must be held. He can not have successive suits against the same parties in order to determine whether or not he might recover upon a phase of the case not presented in the first action.................................... 182

**2. Same.**

Nor does it affect the conclusiveness of the former judgment as an election, that the facts relied upon as basis of the second suit were not known at the institution of the first suit, as they could have been set up by amendment; nor is the election defeated by the partial invalidity of the first judgment, e. g., in being a money judgment against a nonresident upon ordinary citation by publication................................................ 182

**3. Case in Judgment.**

Green loaned money to Burleson and Gray, taking a mortgage to secure it upon lands owned by the borrowers. Gray sold his interest in the lands to the Wards, taking their obligation to pay his half of the loan from Green. Green sued Burleson, Gray, and the Wards. Service by publica-

tion on Gray, and only foreclosure asked as against the Wards. Judgment and decree accordingly. At the foreclosure sale, Green purchased at a sum less than the judgment. Green then sued the Wards, setting up their obligation to pay executed to Gray. *Held,* that Green was concluded by the first suit........................................................... 183

ERROR to Court of Civil Appeals for Third District, in an appeal from San Saba County.

The facts sufficiently appear in the opinion.

In the petition for writ of error it is assigned, "that the Court of Civil Appeals erred in not holding that the contract between Gray and the Ward Bros. was one that the defendants in error (Green and his wards) had the right to accept, and in so doing, that they could only collect of the Wards the money they had agreed to pay, and that when they did so they must do what Gray must have done, that is, release the lien on the land sold, the money so paid being the purchase money, and Gray's deed to them (the Wards) being the consideration for the promise to pay the money. Defendants in error (Green et al.) had the right to repudiate the contract by the Wards with Gray and sue upon the original contract with Gray and Burleson, and foreclose against the Wards, as purchasers with notice; and Green et al., having pursued the latter course, they could not thereafter maintain against the Wards a suit for a money demand for the balance remaining due after the foreclosure sale, or any part thereof."

*E. L. Rector* and *Rector, Thompson & Rector,* for plaintiffs in error.

1. The Wards having purchased the land subject to the mortgage, and having received a deed with covenants of general warranty, but having assumed the payment of only one-half the mortgage debt as part of the purchase price of the land, in a suit on their obligation for the half assumed by them, could demand a release of the lien of the other half of the mortgage debt before they could be compelled to pay the half they had assumed.

In support of this proposition the following propositions and authorities are believed to be directly in point:

Where a purchaser holds under deed with covenants of warranty, and with notice of defects in the title at the time of purchase, he can, after eviction, resist payment of the purchase money, and set up the breach of warranty as defense. Norris v. Ennis, 60 Texas, 85; Demaret v. Bennett, 29 Texas, 267; Price v. Blount, 41 Texas, 475; Cooper v. Singleton, 19 Texas, 265; Bigham v. Bigham, 57 Texas, 238; Warren v. Clark, 24 S. W. Rep., 1105; Hart v. Porter, 5 Serg. & R. (Pa.), 199.

In an action on a single bill given for land sold, the obligor may give in evidence judgments against the grantor previous to the deed under which the land has been sold, whether the clause in the warranty be general or special. Tod v. Beale, 16 Serg. & R. (Pa.), 258.

A purchaser of land who has given his bond for the purchase money may detain for incumbrances, although he has no covenant against incumbrances. 1 Watts (Pa.), 263.

Incumbrances, though not paid off, are a good defense to the amount in an action on the bond for the purchase money. Poke v. Kelly, 13 Serg. & R. (Pa.), 165.

The case of Wolbert v. Lucas, 10 Pennsylvania State, 73, is believed to be directly in point, and the questions there decided identical in principle with the questions in issue in this case. It was decided in that case, that where the purchaser had executed a note and mortgage on the purchased premises, for the purchase money, having taken a deed with covenants of special warranty, and knowing at the time of the purchase that the land was incumbered with a prior mortgage, but the payment of which was not assumed by the purchaser, nor the amount deducted from the purchase price, the purchaser was entitled to have his mortgage credited with the amount paid by her on the prior incumbrance.

2. The matter was adjudicated in the first suit, which is apparent upon the face of the petition. The demurrer to the petition should have been sustained. Foster v. Wells, 4 Texas, 101; Johnson v. Murphy, Admr., 17 Texas, 217; Weathered v. Mays, 4 Texas, 387; Hatch v. Garza, 22 Texas, 187; 15 Am. and Eng. Encyc. of Law., p. 837, sec. 3.

*B. D. Orgain* and *Jones & Votaw,* for defendants in error.—1. In the character of case contained in the first suit, the court would acquire jurisdiction to the extent only to foreclose the lien and order the land sold and proceeds applied to payment of the debt, but would not have the power to render a judgment in personam against Gray to support an execution to run against such defendant. Martin v. Cobb, 77 Texas, 544; Hardy v. Beaty, 84 Texas, 564; Taliaferro v. Butler, 77 Texas, 582; Goodman v. Henley and Gabbert, 80 Texas, 503; Stewart v. Anderson, 70 Texas, 595; York v. The State, 73 Texas, 654; Scott v. Streepy, 73 Texas, 548; Hochstadder v. Sam, 73 Texas, 319; Kemper v. Comer, 73 Texas, 196; Foote v. Sewall, 81 Texas, 659; 3 Ct. App. C. C., sec. 335; Freem. on Judg., sec. 564; Pennoyer v. Neff, 5 Otto, 715; 29 Myer's Fed. Dec., secs. 109–111, 115.

2. In order for the exception of appellant and his plea of res adjudicata therein presented to have been good as to Tom and W. K. Ward, it was necessary that the original petition of plaintiff should have shown that this contract of Ward Bros. to T. A. Gray, to pay half of Green's debt, was in issue in the suit in Bastrop County. The mere fact that it ought or could have been set up in that suit, is not sufficient. Pishaway v. Runnels, 71 Texas, 352–354; Phillipowski v. Spencer, 63 Texas, 604; Teal v. Terrill, 48 Texas, 508; Kemper v. Comer, 73 Texas, 201, 202; 3 Ct. App. C. C., secs. 335, 346; 2 Id., sec. 521; King's Conflicting Cases, pp. 141, 142, sec. 116, note.

3. When a party holds distinct causes of action, and sues on any one of them, he does not prejudice his right to sue on the other.   15 Am. and Eng. Encyc. of Law, 343.

4. The contract between Ward Bros. and T. A. Gray, by which they assumed to pay the mortgage debt (or one-half of it) as part consideration of the land sold Ward Bros., created a distinct and new cause of action to the mortgagee, and one on which Green, the mortgagee, could have sued Ward Bros., direct, either jointly with Gray or alone.   3 Pom. Eq. Jur., secs. 1206, 1207, pp. 191, 195, and notes; 15 Am. and Eng. Encyc. of Law, secs. 2–5, pp. 836–841; Bay v. Williams, 54 Am. Rep., 209; Dean v. Walker, 47 Am. Rep., 467–471; Bower v. Beck, 16 Am. Rep., 124; 4 Wait's Act. and Def., 580.

BROWN, ASSOCIATE JUSTICE.—On May 1, 1886, R. A. Green was the guardian of the minors Sidney F. Green, Beulah Green, Francis Green, and Georgia Green, and as such loaned $5000 to Leigh Burleson and T. A. Gray, taking their note therefor, with a deed of trust on about 6000 acres of land in San Saba County, as well as other property.   The note was payable in Bastrop County.

The title to the lands included in the deed of trust was in Leigh Burleson, but Gray had an interest in it of one-half.   On the 6th day of July, 1887, T. A. Gray sold his interest in the land included in the deed of trust to Tom and W. K. Ward, and took from them an instrument in writing, as follows:

"THE STATE of TEXAS, }
   " San Saba County.    }

"Know all men by these presents, that we, Tom Ward and W. K. Ward, composing the firm of Ward Bros., in consideration of the transfer to us by T. A. Gray of certain land, the deed to which was executed on this day to us by Leigh Burleson, have assumed the payment of the following notes, debts against the said T. A. Gray, we agreeing to pay the same and to hold the said Gray harmless upon their account.   Said notes are as follows:   One-half of a note for the sum of $5000, signed by Leigh Burleson and T. A. Gray, to R. A. Green, dated May 1, 1886, drawing 12 per cent interest.  *  *  *  We hereby agreeing and binding ourselves, our heirs and assigns, that we will fully pay off and discharge the one-half of said notes, and to pay to the said Gray all costs, fees, and damages that he may suffer or incur by reason of our failure to comply with this agreement, together with any money he may be compelled to pay on said notes or either of them.   This July 6, 1887."

The deed for the land was made to the Wards by Leigh Burleson alone.

September 4, 1891, R. A. Green, as guardian, instituted suit in the District Court of Bastrop County against Leigh Burleson and T. A.

Gray upon their note, and to foreclose the mortgage on the land.   Tom and W. K. Ward and Mrs. B. Burleson were made parties defendant as claiming some interest in the land, but no judgment was asked against them for the debt, and no allegation made as to the agreement of the Wards given to Gray to pay half the debt.   Gray was served by publication, he being a nonresident of the State.   The other defendants were served personally, but none appeared except the Wards. The court appointed an attorney to represent Gray.   Judgment was rendered in favor of plaintiff against Leigh Burleson and T. A. Gray for $6357.91, with interest, and the mortgage was foreclosed as against all of the defendants, execution to issue for balance of judgment, if not satisfied by sale of the land, against Leigh Burleson.   Order of sale was issued and the land sold, being bought in by R. A. Green for $3000, and after deducting costs a credit was entered on the judgment for the sum of $2816.30.   Since the sale Sidney F. Green has become of age, and Beulah Green intermarried with Nathaniel Fowler.   Leigh Burleson is insolvent.

R. A. Green, as guardian of the minors Francis and Georgia Green, joined by Sidney Green and Beulah and Nathaniel Fowler, instituted this suit in the District Court of San Saba County against Tom and W. K. Ward and T. A. Gray, to recover the balance unpaid on said debt, setting up the agreement of the Wards given to Green to pay half of the debt, and also against Gray on the note.   The petition set out in detail the foregoing facts, including the facts with regard to the suit in Bastrop County.   To this petition defendants Ward filed special exceptions, to the effect, that the petition showed that the plaintiffs had sued upon the note and foreclosed the mortgage upon the lands, making them parties thereto, without attempting to enforce the agreement with Green, and for that reason plaintiffs could not maintain this second action against them, claiming that the matter had been adjudicated between the parties.

Plaintiffs filed a supplemental petition, alleging that when the first suit was filed they did not know of the agreement between Gray and Ward Bros.   Defendants' exceptions were overruled by the District Court, and upon trial judgment was rendered against defendants Ward for one-half of the amount remaining unpaid upon the note, which judgment was affirmed by the Court of Civil Appeals.   Many other questions are made in the case, but we think it unnecessary to notice them, as in our judgment they were correctly decided against plaintiffs in error.

The only question before us is, did the court err in overruling defendants' exceptions to the plaintiffs' petition? It is unnecessary to cite authority for the proposition that Green had a right to sue Ward Bros. and Gray upon the note, and the agreement made by the Wards to pay it.   However, Green was not bound to accept the promise of the Wards to pay the note, but might sue Gray alone for the debt, or rather Burleson and Gray, and join the Wards for the purpose of fore-

closing the mortgage upon the land. It follows, that Green had choice of two methods of proceeding in this matter. First, he could sue Burleson and Gray for the debt and foreclosure of the mortgage, joining the Wards as claiming an interest in it; or second, he could sue Burleson and Gray for the debt, joining the Wards as defendants, and enforce their contract to pay one-half of the note, with a foreclosure of the lien of the mortgage upon the land. He chose the former course, and the question is, by his selection, is he estopped to resort in a second suit to the agreement made by Ward Bros. to pay one-half the note?

The fact that Green did not know of the existence of the agreement between the Wards and Gray at the institution of the first suit, by which the former agreed to pay one-half of the note due to Green, is not material, for the reason, that if the information was in the possession of Green before judgment was rendered in that suit, he could have amended and set up that cause of action against the Wards. By failing to do so, the judgment is given the same effect as if he had known the fact before the suit was filed.

Neither does the invalidity of the personal judgment rendered against Gray in the former suit affect the question. It is not the judgment against Gray that estops the plaintiffs, if estopped, but the proceeding to foreclose against Ward Bros. Whether valid or not, as against Gray, the judgment just as effectually proves the election of remedies made by the plaintiff, and just as seriously affects the interests of the defendants Ward.

Where a party who has a choice of remedies upon a cause of action pursues one of them to final judgment, he thereby makes an election by which he must be held to be estopped, and he can not have successive suits against the same parties in order to determine whether or not he might recover upon a phase of the case not presented in the first action. Priestley v. Fernie, 3 H. & C., 977; Kingsley v. Davis, 104 Mass., 178; Thomas v. Joslyn, 36 Minn., 1; Martin v. Boyce, 49 Mich., 122; Toope v. Prigge, 7 Daly, 208; Gillett v. Lee, 2 U. C., 743; Big. on Estop., pp. 116, et seq.; 2 Black on Judg., sec. 632; Moore v. Gammel, 13 Texas, 120; Burson v. Blackley, 67 Texas, 5.

In each of the cases of Priestley v. Fernie and Kingsley v. Davis, cited above, the contract had been made with an agent, and the plaintiff under the facts of those cases might have maintained an action against either principal or agent. Suit was instituted and prosecuted to final judgment against the agent, and afterwards another action was commenced against the principal for the same cause of action, but the courts held, that when the plaintiff elected to proceed against one, he could not thereafter sue the other upon the same cause of action.

Toope v. Prigge, cited above, was a suit against the owner of property upon which a house had been constructed, for which plaintiff alleged, that at the request of the defendant he had furnished material, and sought to establish a lien on the house and lot. Defendant pleaded

that the plaintiff, for the same cause of action, had before that instituted and prosecuted to final judgment a suit against this defendant and another, claiming that the material was furnished at the request of the other defendant, a contractor, asking judgment personally against the contractor and the foreclosure of the mechanic's lien upon the property as against the owner. The court held, that the former suit was a bar to the second action.

In Burson v. Blackley, supra, this court said: "If the vendor in an executory contract to sell land elects not to rescind the contract, but to enforce it, he is to be deemed a creditor having the superior lien on the thing sold which is the subject matter of the executory contract— in effect, he stands as a mortgagee is held to stand in those States in which it is held that the legal title passes by the mortgage." And again, in the same opinion, the court said: "Rescission is one of the remedies such a vendor may have to relieve himself from further obligation under the executory contract. He may, however, waive such right and have the land subjected to sale for the payment of the purchase money." The court held in that case that the right to rescind the contract had been waived.

The note from Burleson and Gray to Green must necessarily be the basis of any suit upon the agreement made by Ward Bros., and when an attempt was made to collect the note and to enforce the lien, it devolved upon the plaintiff, if he desired to pursue the remedy upon the contract of the Wards to pay the note, that he should set it up in the suit filed upon that note; he could not, under the rules of proceeding in our courts, be permitted to divide up his claim against the Wards and enforce it in parts. Green had the right to select his remedy, either to sue Burleson and Gray upon the note, and to make the Wards parties in order to foreclose the lien upon the land, or in addition thereto, to set up the agreement made for his benefit between Gray and the Ward Bros., and ask judgment also upon that agreement against defendants Ward for half of the amount due on the note, with a foreclosure upon the land. He elected to pursue the former course; by that election he is bound, and is estopped by the judgment in that suit from recovering against the Wards upon the agreement with Gray in this suit. As before said, Green was not compelled to accept the agreement of the Wards to pay the half of his note; he had the right to repudiate it, and rely upon his contract as he made it. Having so elected, he can not be permitted thereafter to seek a remedy upon the note as supplemented by that agreement. Thomas v. Joslyn, 36 Minn., 1. There is much conflict in the authorities as to whether or not the agreement between Gray and the Wards became effective in Green's favor before he accepted it, and it is not necessary for us to decide that question here. It was his right to waive his remedy upon it, which he did by his election not to sue upon it.

The action of Green may have put the Wards in a position to suffer loss which otherwise they could have avoided. If the agreement was

not to be enforced, and the only question was whether or not they should lose the land without personal responsibility for the unpaid balance of the debt, it might have been considered wise to give up their interest in the land rather than to bid upon it the amount of the debt; whereas, if they had been notified that they were to be liable for half of what the land did not bring at public sale, they might have deemed it advisable to make the land bring the debt, or at least its real value. We think, that after electing to resort to the land, and after it had been sold under the judgment of foreclosure, Green should not be permitted to hold Ward Bros. liable for half of what remains unpaid.

The court erred in not sustaining the special exception presenting the question of estoppel, and the Court of Civil Appeals erred in not sustaining the assignment based upon that ruling, for which errors the judgments of both courts are reversed, and the cause remanded to the District Court.

*Reversed and remanded.*

Delivered April 15, 1895.