We approve the holding of the Commission of Appeals on the questions discussed in its opinion.

---

SABINE MOTOR CO. v. W. C. ENGLISH AUTO CO. et al. (No. 725—4650.)

(Commission of Appeals of Texas, Section B. Feb. 23, 1927.)

1. Sales ⪸48½—Failure to deliver bill of sale on transfer of secondhand automobile, as required by statute, held not to avoid sale (Pen. Code 1925, arts. 1434, 1435).

Failure to comply with Pen. Code 1925, arts. 1434, 1435, requiring delivery to purchaser of bill of sale on transfer of secondhand motor vehicle, *held* not to avoid sale.

2. Chattel mortgages ⪸129, 159—Mortgagor has title and right of possession to mortgaged property until title is lost through legal proceedings or under terms of mortgage.

Legal title to mortgaged property remains in mortgagor, who has right of possession until title is lost through legal proceedings or by virtue of terms of mortgage itself.

3. Chattel mortgages ⪸159—Mortgagee seizing mortgaged property could not assert ownership until title passed under foreclosure or in accordance with power of sale.

Mortgagee, entitled to seize mortgaged property, could not handle property as owner until title had passed either under foreclosure or in accordance with power of sale contained in mortgage.

4. Judgment ⪸707—Mortgaged property cannot be lawfully taken from mortgagor having rightful possession, or from his assignee, in lawsuit to which he is not party.

Mortgagor or his assignee cannot be lawfully derived of rightful possession of mortgaged property in lawsuit to which he is not party, as rights of party not in court cannot be adjudicated.

5. Judgment ⪸707—Assignee of mortgagors, knowing of pendency of foreclosure suit, was not required to intervene to assert his rights.

Assignee purchasing mortgaged cars, from whose possession cars were taken in foreclosure suit, in which assignee was not party, was not required to intervene and assert his rights, though he knew of pendency of suit.

6. Chattel mortgages ⪸255—Mortgagee could not foreclose chattel mortgage by sales in court and out of court; remedies being inconsistent.

Mortgagee could not proceed to foreclose chattel mortgage by both sale in court and sale out of court, such remedies being inconsistent.

7. Chattel mortgages ⪸169—Sale of mortgaged cars taken from assignee of mortgagors in foreclosure suit, to which assignee was not party, held conversion.

Taking of mortgaged cars from assignee of mortgagors, and sale in foreclosure suit, to which assignee was not party, *held* conversion.

8. Chattel mortgages ⪸176(5)—Assignee of mortgagors, from whom property was taken and sold in foreclosure suit, to which he was not party, could recover value at time of conversion.

Assignee of mortgagors, from whose possession cars were taken and sold in foreclosure suit, to which assignee was not party could recover value of cars at time of conversion.

9. Chattel mortgages ⪸176(2)—In suit for conversion of mortgaged property taken and sold in foreclosure suit to which he was not party, mortgagors' assignee was not required to tender amount due under mortgage.

Assignee of mortgaged cars, from whose possession cars were taken in foreclosure suit, to which he was not party, was not obliged to tender amount due mortgagee as condition precedent to bringing suit for conversion, though mortgagee had right to enter plea for offset of amount due under mortgage.

10. Chattel mortgages ⪸176(1)—Mortgagee could offset amount due under mortgage, if uncollected, as against assignee of mortgaged property suing for mortgagee's conversion.

In action by assignee of mortgaged property for conversion of mortgagee by taking property from assignee's possession and selling it in foreclosure suit, to which assignee was not party, mortgagee could offset amount due under mortgage providing amount had not been collected from mortgagors.

11. Chattel mortgages ⪸225(1)—As between mortgagors and their assignee buying mortgaged property for value, primary liability rested with mortgagors.

As between mortgagors and their assignee, who bought mortgaged property for value, liability for mortgage debt was primarily that of mortgagors.

12. Appeal and error ⪸1177(6)—Case should be remanded on reversal, where rights of parties were not fully adjudicated.

Judgment should be reversed and remanded rather than reversed and rendered, where justice would be better subserved by so doing and parties given opportunity to assert all their rights.

13. Chattel mortgages ⪸176(1)—Assignee who received mortgaged property for value could, in suit for conversion against mortgagee, recover over against mortgagors amount of mortgage debt offset by mortgagee.

Where, in action by assignee for value of mortgaged property against mortgagee for conversion, mortgagee offset amount of mortgage debt, assignee could have mortgagors made parties to recover from them amount of such offset.

---

⪸For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(291 S.W.)

14. Sheriffs and constables ⚞⚟98(5)—Sheriff, taking property from assignee of mortgagors under sequestration writ in foreclosure suit, in which assignee was not party, held party to conversion.

Where, in action for foreclosure of mortgaged property, sheriff under sequestration writ took cars from assignee of mortgagors who was not named as defendant, sheriff *held* party to conversion; writ being directed only against named defendants.

15. Chattel mortgages ⚞⚟169—Mortgagee acted at peril in disposing of mortgaged property in suit in which assignee for value was not party.

Mortgagee, disposing of mortgaged property taken from mortgagors' assignee in suit in which assignee was not made party, acted at peril.

16. Sequestration ⚞⚟21—Persons contributing as bondsmen or otherwise to conversion of property under writ of sequestration were guilty as principals.

All persons contributing as bondsmen or otherwise to conversion of property taken under writ of sequestration from person not party to suit were guilty as principals.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Action by Maud Lee Janes doing business under the name of the Sabine Motor Company, joined by her husband, against W. C. English, doing business under the name of the W. C. English Auto Company, and others. Judgment for defendants was affirmed by the Court of Appeals (283 S. W. 224), and plaintiff brings error. Judgments of district court and Court of Appeals reversed, and cause remanded.

King & Jackson, of Beaumont, for plaintiff in error.

M. T. Bell and Orgain & Carroll, all of Beaumont, for defendants in error.

POWELL, P. J. The nature and result of this case in the trial court have been admirably stated by the Court of Civil Appeals as follows (283 S. W. 224) :

"Appellant, Maud Lee Janes, doing business under the name of Sabine Motor Company, joined by her husband, brought this suit in the District Court of Jefferson County, Tex., against the appellees, W. C. English, doing business under the name of W. C. English Auto Company, R. M. Hill and F. H. Farwell, residents of Orange County, Tex., and T. H. Garner, Sheriff of Jefferson County, Tex., and the American Surety Company of New York, for the value of two Studebaker automobiles alleged to have been converted by the defendants, alleging the value of the automobiles to be $1,000 each. Plaintiff also prayed for $3,000 exemplary damages.

"Appellant alleged that on the 19th day of July, 1924, she was the owner and in lawful possession of said two Studebaker automobiles, claiming title thereto, and that on said date T. H. Garner, as sheriff of Jefferson county, Tex., seized said automobiles and took them from her possession, without her consent, said sheriff acting under and by virtue of writs of sequestration issued out of two suits pending in Orange county, Tex., to which suits she was not a party; that prior to the seizure of said automobiles by T. H. Garner, sheriff, the defendants W. C. English, as principal, and R. M. Hill and W. H. Farwell, as sureties, executed to said sheriff two separate indemnity bonds in the sum of $1,050 each, conditioned upon holding said sheriff harmless in taking possession of said automobiles, thereby causing and directing said sheriff to seize said automobiles under said writs. She further alleged that the automobiles were never returned to her, but that they were sold under orders of sale issued out of said Orange county suits, and that the defendant, American Surety Company of New York, was surety on defendant T. H. Garner's bond as sheriff at the time of the seizure of said automobiles.

"The defendant W. C. English answered by general demurrer, general denial, and specially denying:

"(1) That plaintiff had any title to the automobiles at the time they were seized by the sheriff, and alleged that if said cars were in the possession of plaintiff at the time they were taken possession of by the sheriff, plaintiff did not rightfully have possession of same, but that such possession was acquired and continued illegally, without any legal right upon plaintiff's part to have the possession thereof.

"(2) That at the time said cars were seized by the sheriff, they were the property of George K. McGill and J. B. Sanders, one each; that said cars were at said time secondhand cars, having long theretofore been purchased from the W. C. English Auto Company by the said George K. McGill and J. B. Sanders, and said purchasers having given to said W. C. English Auto Company a mortgage on said cars to secure certain notes owing to said English Auto Company.

"(3) That said English Auto Company filed suit in the county court of Orange county, Tex., against McGill and Sanders, seeking judgment on its debt and foreclosure of its mortgage lien on said cars, and at the time of the filing of said suits caused writs of sequestration to be legally issued out of said Orange county court, which were duly executed and the cars taken into the possession of said sheriff, Garner, as the property of McGill and Sanders, respectively.

"(4) That thereafter, on the 24th day of October, 1924, judgment was entered in favor of said English Auto Company against the said McGill and Sanders in said suits foreclosing the said mortgage liens, and orders of sale were issued out of said court, by virtue of which said cars were legally and duly sold.

"The defendants Garner, Hill, Farwell, and the American Surety Company of New York filed answers in substance the same as that of W. C. English Auto Company.

"Plaintiff, by supplemental petition, answered the pleadings of the defendants by general demurrer, special exceptions, and general denial.

---

⚞⚟For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"The case was tried before the court without a jury. All exceptions, general and special, were overruled, and judgment rendered that plaintiff take nothing as against the defendants, or either of them. Notice of appeal was duly given, and the case is before us for review."

The Court of Civil Appeals then sets out in full the findings of fact and conclusion of law of the trial court. They are lengthy, and we do not think it necessary to repeat them here. The English Auto Company merely, in a court proceeding, and not under any power of sale in its mortgage, sequestered two automobiles it had theretofore sold to McGill & Sanders. The latter parties had not paid all of their notes given in payment for the cars. The English Auto Company was entitled to judgment for its debt against McGill & Sanders and a foreclosure of its mortgage lien against them. But, before any such relief was sought, McGill & Sanders had sold said cars, for value, to the Sabine Motor Company of Beaumont. It is admitted that the latter company had notice of the registered mortgage in favor of the English Auto Company. After this last purchase, the cars were taken by the Sabine Motor Company from Orange to Beaumont. A little later they were taken from the plaintiff in error, without its consent and under process issued in a suit to which it was not even a party. The record shows that the debts owing to the English Auto Company by McGill & Sanders were much less than the market value of the cars. Therefore the English Auto Company had substantial rights in the cars. But at the sheriff's sale they were sold for practically a nominal amount, and bought in by plaintiff in the judgment.

The judgment of the district court was affirmed by the Court of Civil Appeals. See 283 S. W. 224. The writ of error was granted in this case upon the fourth proposition under the first, second, and third assignments in the application. That proposition reads as follows:

"The plaintiff having purchased the two automobiles, the value of which is sued for, and paid a valuable consideration therefor, and having received possession and bills of sale therefor from the former owners, although said bills of sale were not sworn to, she had an indefeasible title to said automobiles as against the defendants—and the whole world, or at least such a title or claim of title as required an adjudication of her rights by proper procedure in a court of competent jurisdiction as a prerequisite to a seizure of such automobiles or a foreclosure of alleged mortgage liens thereon."

The findings of the trial court, in connection with above proposition, were substantially similar with reference to each car. We quote that with reference to the Sanders car as follows:

"I further find that, during the year 1924, J. B. Sanders, with the intention of conveying title, delivered said car to the Sabine Motor Company, of which Mrs. Maud Lee Janes was the sole owner, and that the said Mrs. Janes was the sole owner, and that the said Mrs. Janes paid J. B. Sanders value therefor.

"I further find that the said J. B. Sanders did not execute and deliver to the Sabine Motor Company, or Mrs. Maud Lee Janes, a bill of sale for said car, as required by law, but that the said J. B. Sanders did deliver a paper signed by him, but said instrument did not give the correct number of said car, as required by law, same was not sworn to, and said instrument was never filed with the state highway commission or the county clerk of Orange county, Tex.

"I find that said car was removed from Orange county by the Sabine Motor Company in violation of the terms of the mortgage of date January 8, 1923, hereinbefore referred to, and further find that, at the time of its seizure by the sheriff of Jefferson county, Tex., the possession of same was held for the benefit of the Sabine Motor Company, it claiming to be the owner of the title thereto; that the Sabine Motor Company nor Mrs. Maud Lee Janes were parties to the suit of the W. C. English Auto Company against J. B. Sanders seeking to foreclose the mortgage above referred to; and that neither the Sabine Motor Company nor Mrs. Maud Lee Janes authorized the seizure and sale of said car by the sheriff of Jefferson county."

The Court of Civil Appeals seems to have affirmed the judgment of the trial court on the theory that, when the cars were taken from the Sabine Motor Company by virtue of the sequestration writ, said motor company was not the owner of the title thereto and hence not entitled to their possession. Consequently, there was no conversion when they were seized. The Court of Civil Appeals seems to have two reasons for holding that the plaintiff in error was not entitled to the possession of the cars at the time of their seizure. We shall now discuss each of those reasons.

In the first place, we quote from that court as follows:

"Appellees insist that the judgment should be affirmed for the further reason that the undisputed evidence and the unchallenged findings of the trial court show that the automobiles in question were secondhand automobiles at time they were purchased from the mortgagors, McGill & Sanders, by appellant, and that the purchase of said cars was not made in compliance with the Acts of 1919, pp. 254, 255 (articles 1434 and 1435, Penal Code 1925), regulating the sale and transfer of secondhand automobiles, but was in violation of said penal laws and therefore appellant did not have such legal possession of said cars as would support her action in trespass.

"We think this contention should be sustained. Goode v. Martinez (Tex. Civ. App.) 237 S. W. 576; Ferris v. Langston (Tex. Civ. App.) 253 S. W. 309; Foster v. Beall (Tex. Civ. App.) 242 S. W. 1117; Cullum v. Lub-Tex Motor Co. (Tex. Civ. App.) 267 S. W. 322; Grapeland Motor Co. v. Lively (Tex. Civ. App.) 274 S. W. 168; Howell v. Conn. Fire Ins.

Co., 215 Mo. App. 386, 257 S. W. 178; Hessen v. Automobile Ins. Co., 195 Iowa, 141, 190 N. W. 151, 30 A. L. R. 657."

[1] Since the decision of the Court of Civil Appeals in the instant case was rendered, Section A of the Commission of Appeals has held that the failure to deliver this bill of sale in the transfer of. a secondhand automobile does not avoid the sale. See Hennessy v. Automobile Owners Insurance Association (Tex. Com. App.) 282 S. W. 791. So the Court of Civil Appeals erred in affirming the trial court's judgment upon that ground.

[2] In the second place, we quote from the opinion of the Court of Civil Appeals:

"The mortgagee being entitled to possession of the cars, the mortgagor or those holding under him, with notice, cannot without proof of payment or other extinguishment of the mortgage maintain an action for conversion of the property. Jones on Chattel Mortgages, § 426. This on the theory that the mortgage vests the legal title and right to possession of the property in the mortgagee, leaving a mere equitable title, that is to say, a mere right in equity to redeem from the mortgage in the mortgagor. It follows that such mortgagor must show something more than such mere right in equity to redeem before he can maintain an action at law for wrongful conversion against the mortgagee having such legal title and right to possession. Hill v. Merriman, 72 Wis. 483, 40 N. W. 400."

This is also erroneous. In Texas, the legal title to mortgaged property remains in the mortgagor. He, or his assigns, has the right to possession thereof until it is lost through legal proceeding or by virtue of the terms of the mortgage itself. For instance, we quote as follows from our Supreme Court in the case of Soell v. Hadden, 85 Tex. 188, 19 S. W. 1087:

"The doctrine that the legal title vests in the mortgagee after breach of its condition does not obtain in this state; not even as to personal property. A mortgage both as to real and personal estate is treated as a mere security for the debt. Hudson v. Wilkinson, 45 Tex. 444; Wright v. Henderson, 12 Tex. 43; Duty v. Graham, 12 Tex. 427."

We quote this language from 11 Corpus Juris, p. 695:

"Under the more generally accepted modern rule, foreclosure, either in accordance with the terms of the mortgage, or in the manner prescribed by law, is necessary to cut off the mortgagor's title."

This is the rule in Texas. It goes without saying that a proper action in court cuts off the title of the mortgagor or his assigns. And our Supreme Court has recognized the validity of stipulations in mortgages authorizing the seizure and sale of mortgaged property without legal proceedings at all. See Harling v. Creech, 88 Tex. 300, 31 S. W. 357; Singer Sewing Machine Company v. Rios, 96

Tex. 174, 71 S. W. 275, 60 L. R. A. 143, 97 Am. St. Rep. 901. In the former case, Associate Justice Brown said:

"The instruments being chattel mortgages, the vendor had the rights of a mortgagee under a chattel mortgage containing the stipulations of right to take possession, which would be to take possession of the property if he deemed himself insecure, or the debt not being paid, and to hold or dispose of the property in the character of mortgagee, and not as owner.

"We answer the question, that under the law the instruments were chattel mortgages, and by their terms the defendant, Creech, had the right to take possession upon failure to pay or if he deemed himself insecure, but he had no right to convert the property to his own use. It was the property of the plaintiff, subject to the defendant's rights as mortgagee."

In the latter case Chief Justice Gaines, referring to the former case, said:

"So far we have not adverted to the case Harling v. Creech, 88 Tex. 300 [31 S. W. 357]. In that case in answering a certified question, this court, after construing the instrument in controversy to be a chattel mortgage, said: 'The instruments being chattel mortgages, the vendor had the rights of a mortgagee under a chattel mortgage containing the stipulations of right to take possession, which would be to take possession of the property if he deemed himself insecure, or the debt not being paid, and to hold or dispose of the property in the character of mortgagee, and not as owner.' It is claimed by counsel for appellee that this was a dictum. Without pausing to inquire whether the remark was called for in a decision of the question there certified, we deem it sufficient to say, that if a dictum, it is in our opinion a correct announcement of the law."

[3-5] And in the instant case it seems clear to us that, without any action in court, the English Auto Company, mortgagee, could have seized these cars either from the original mortgagor or the Sabine Motor Company, its assignee, but it did not do so. In this connection Justice Reese, speaking for the Court of Civil Appeals at Galveston, has written ably. See Hughes v. Smith, 61 Tex. Civ. App. 443. 129 S. W. 1142. But, even after such a seizure, it would have been necessary to handle the cars as mortgagees and not as owners, until the title had passed, either under foreclosure or in accord with the power of sale contained in the mortgage. It is not clear, from the mortgage before us, whether this sale after seizure could have been made without a foreclosure suit. That is immaterial here, because the fact is that both the seizure and sale of this property was in a foreclosure suit. Such a proceeding was either the only one open to the mortgagee or he voluntarily elected that remedy. In either event, it is well settled that you cannot deprive a party lawfully in possession of property of such property in a lawsuit to which he is not a party. In other words, you cannot adjudicate the rights of a party

who is not in court. It seems that the Court of Civil Appeals does not take particular issue with this principle of law. But they say that the Sabine Motor Company, assignee of the mortgagor, knowing of the pendency of this suit, should have intervened and asserted her rights. We think this is contrary to our Supreme Court decisions, as we shall hereafter show.

[6] The mortgagee could not, in any event, pursue two inconsistent remedies in seizing or selling these cars. A sale in court is inconsistent with one out of court. Both cannot be pursued. See Avery & Sons v. Loan Agency (Tex. Civ. App.) 62 S. W. 793. We quote the following from that case:

"These remedies have been held by some courts to be merely cumulative, and the adoption of one not a waiver of the right of the lienholder to resort to the other. Devl. Deeds, § 388. But the Supreme Court of this state, in Cameron v. Hinton, 92 Tex. 501, 49 S. W. 1047, held that the remedies were inconsistent, and that, when the remedy by suit to foreclose had been resorted to, the lienholder was bound to enforce his rights under the foreclosure suit. See, also, Ward v. Green, 88 Tex. 177, 30 S. W. 864. It follows that, if the remedies are inconsistent, a resort to one of them is an election to pursue that remedy alone, and a waiver of the right to pursue the alternate remedy. Such election appears to have been made by the loan agency in this case by its suit to foreclose. The loan agency having prosecuted its foreclosure suit to judgment, and having accepted from Mrs. Moseley a deed to the lands in controversy in satisfaction of the judgment, its right to foreclose by trustee's sale was forever lost, and the sale made by the trustee was null and void."

[7-10] The Sabine Motor Company was deprived of its property under process in a suit to which it was not a party. The taking and sale thereof under such circumstances was a conversion, and the plaintiff in error had the right to recover the value of the cars at the time of their conversion. She was not required to tender the amount due the mortgagee as a condition precedent to the bringing of her suit. But the mortgagee had the right to enter a plea for an offset, as against her recovery, of the amount due under the mortgage. In this connection we quote as follows from our Supreme Court in the case of Soell v. Hadden, supra:

"It was not necessary that the plaintiff should tender the amount of the debt as a condition to the bringing of the suit. The defendant asserted a claim of absolute ownership in the property, which has been held to dispense with the necessity of a tender of the money before suit. Lucketts v. Townsend, 3 Tex. 119 [49 Am. Dec. 723]; Watts v. Johnson, 4 Tex. 317. The defendant had the right, however, to have the debt, if it had not been paid, set off against any recovery the plaintiff may have been entitled to against him. The doctrine that the legal title vests in the mortgagee after breach of its condition does not obtain in this state; not

even as to personal property. A mortgage both as to real and personal estate is treated as a mere security for the debt. Hudson v. Wilkinson, 45 Tex. 444; Wright v. Henderson, 12 Tex. 43; Duty v. Graham, 12 Tex. 427 [62 Am. Dec. 534]. So the plaintiff could bring his suit as for a conversion of the property, and his remedy is not in the nature of a suit by bill to redeem."

In this same connection we here give a quotation from the case of Hughes v. Smith, supra, as follows:

"Under appropriate pleadings, however, appellee is entitled to recover of appellant, or to have offset against his claim for the value of the mules and damages, so much or such proportion of the mortgage debt as was secured by these two mules."

Along this same line, we refer also to the case of Payne v. Lindsley (Tex. Civ. App.) 126 S. W. 329.

[11] It was material and prejudicial error to seize this property from this woman, the owner of the legal title thereto, and entitled to the possession thereof, and sell it without making her a party to the suit in which each step was taken by the mortgagee. If she had been a party to the suit, it is clear that she would have been required to pay the mortgage debt before she could keep the property. But, in that event, she would have had an opportunity to ask for a recovery over as against the mortgagors who had sold her the property for value. All the equities could have been adjudicated had all the parties been in court. Primarily, the mortgagors, and not their assignee, owed the English Auto Company the mortgage debt.

[12, 13] We are asked by plaintiff in error to render judgment here for $1,100 in its favor, that being the agreed value of the two cars when converted. But we do not think it best to do so. The case must be reversed. When that is true, we think it should be remanded rather than rendered, when justice will probably be better subserved by so doing. We think this case should be remanded for a trial more fully upon the merits in the light of this opinion. The equities of the parties may be pleaded and adjudged upon another trial. Under appropriate pleadings, we think the defendants in error should have credit for the amount of these mortgage debts at the time they were foreclosed, provided they can show that they have not collected their judgment already from the mortgagors themselves. And, in the event of such an offset being allowed, then the plaintiff in error here would have an opportunity to make said mortgagors parties to the suit, and ask for recovery over against them in the amount of such offset. In other words, the plaintiff in error was clearly the owner of these cars at the time of their seizure, and was not required to pay the debts of these mortgagors. But, having purchased them with notice of

the mortgage, she was secondarily liable for the amount of the mortgage debt, if she wanted to keep the cars or recover their value.

[14] Since the case is to be remanded anyway, we think we should say that the sheriff is not protected merely because he had a sequestration writ when he took these cars. It was directed against a named defendant and not the plaintiff in error. When he took the property from some one else, as he did, and not from the defendant named in the writ, he was a party to the conversion. See Vickery v. Crawford, 93 Tex. 374, 55 S. W. 560, 49 L. R. A. 773, 77 Am. St. Rep. 891. In that case the certified question read as follows:

"Question. Where a sheriff, by virtue of a writ of sequestration, issued in conformity with our statutes, seizes certain specified property named in the writ, said property at the time of seizure being owned by and in possession of a stranger to the writ, is such writ a protection to the sheriff in seizing and taking possession of the property, in a suit against him where the stranger seeks to recover damages for such seizure?"

The court, speaking through Associate Justice Williams, answered the question in the negative. It is an able opinion, typical of the writer thereof, and we quote from it as follows:

"We do not believe such to be the scope of the writ of sequestration. It is sued out as an auxiliary writ, merely to preserve the property pending the suit, by which the plaintiff seeks to recover the title or possession of it from the defendant, whose title to hold it is put in issue. The cause of action is stated and the affidavit made against and the bond given to secure only the party sued. While the writ commands the officer to seize the property sued for, it is intended only to enforce the right to its seizure which plaintiff has acquired as against the defendant by complying with the statute. To say that the writ authorizes the sheriff to take the property of another from his possession, seems to us equivalent to saying that the plaintiff has the right to such action when he has not taken the steps required by law to entitle him to it. How can it be the duty of the sheriff to make such a seizure unless it is the right of the plaintiff to have him do so? The history of our legislation shows that it was never allowable to take the property of a citizen from his possession without a proper proceeding against him in which security was given for damages and costs which might result. * * * The sequestration law requires no bond to secure any person but the defendant. It authorizes the defendant, and no one else in the first instance, to give a replevy bond and retain the property, and, if he fails to do so, it authorizes the plaintiff to replevy. It provides for a sale of the property, if it be perishable, in case the defendant does not replevy. There is no provision whatever in this statute for the protection of the rights of any but the parties to the suit. If it be true that the officer is authorized to invade the possession of a stranger to the action and take his property, it may be replevied by either party to the suit or sold as perishable; and, in case of insolvency of the plaintiff, its owner would be left without substantial redress. In our opinion, the statute contemplates no such result. It requires the party desiring to sue for property to bring his action against him who holds it, and to direct his oath against him, and to make his bond payable to him. When he has complied with these requirements, he has entitled himself to a writ to take the property from the defendant for the purposes of preserving it or securing the fruits of the litigation pending the action, but he has not entitled himself, and therefore cannot require the officer, to take the property of any other person. The officer may protect himself, if he finds the property in the possession of a third party and is doubtful as to the ownership, by requiring indemnity. Illies v. Fitzgerald, 11 Tex. 417. The statute regulating the trial of the right of property gives to the owner of personal property, taken under a writ against another, a remedy by which he may regain possession and establish his ownership; but this has never been regarded as depriving him of any remedy given by law to owners of property for the conversion of their goods. It is as applicable in levies under attachments and executions as to those made under sequestrations, and can no more be held exclusive in one case than in the other. It cannot be made available without a bond, and the right of the owner to elect whether he will pursue it or resort to his action for damages against the person who has taken his property is an important one, which may, in many cases, be essential to complete redress. It may be true, also, that a third party may intervene in a sequestration suit involving title to personal property, and have his rights adjudicated; but if he may do this, he may also maintain a separate action. In any of these proceedings, he may fail of complete satisfaction for the wrong done him, unless he can hold the officer responsible, while the latter may protect himself in the way indicated. We answer the question in the negative."

[15] Above case is also authority for our holding already announced herein, contrary to the views of the Court of Civil Appeals herein, that the plaintiff in error was not required to intervene in the foreclosure suit filed against her vendors. When the mortgagee disposed of her property in a suit without making her a party thereto, it did so at its peril.

[16] It should be said, also, that all persons who contributed, as bondsmen or otherwise, to the commission of this tort, are guilty as principals. See Cabell v. Shoe Co., 81 Tex. 104, 16 S. W. 811.

For the reasons stated, we recommend that the judgments of the district court and Court of Civil Appeals be reversed, and the cause remanded to the former for another trial not inconsistent herewith.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and cause remanded to the district

court, as recommended by the Commission of Appeals.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.