## MARTIN v. COVINGTON. (No. 12177.)

Court of Civil Appeals of Texas. Fort Worth. July 8, 1929.

Rehearing Denied Sept. 28, 1929.

John L. Poulter, of Fort Worth, for appellant.

Slay, Simon & Shannon, of Fort Worth, for appellee.

CONNER, C. J. Appellee instituted this suit to recover the sum of $269.83, principal, interest, and attorney's fees, due as the unpaid balance on two promissory notes executed by C. F. Cates, declaring upon a mortgage upon a described Chrysler automobile, which he sought to foreclose, that had been given by Cates to secure the payment of the last of the two notes referred to, upon which the balance due was $50. The mortgage, among other things, contained this special provision, to wit: "If default in payment be made * * * this obligation shall be at once due and payable, and said holder [of the note] may, without demand of performance, remove, take possession of, and sell said chattels at public or private sale, without notice, at any place where found."

The plaintiff at the same time in due form sued out a writ of sequestration, alleging that the car was in the possession of Cates. The writ was subsequently executed, as appears from the sheriff's return, by taking the car from the possession of appellant, N. M. Martin. Martin intervened in the case, and pleaded a purchase of the automobile in question from Cates for a valuable consideration, alleging that plaintiff had wrongfully converted the car to his own use, for which he sought actual and exemplary damages in the sum of $999.

Plaintiff dismissed his suit as to C. F. Cates, and the trial proceeded against the appellant, Martin, alone, resulting in a judgment establishing the amount of indebtedness declared upon in said sum of $269.83, with a foreclosure of the mortgage upon the Chrysler automobile, and directing its sale and the application of the proceeds thereof to the discharge of the plaintiff's indebtedness, to all of which Martin excepted, and prosecutes this appeal.

At the request of appellant, the trial court filed findings of fact and conclusions of law, which are before us; but there is no statement of facts in the record, and hence the court's findings of fact are conclusive now.

In addition to the facts first stated in condensed form, the court found that the plaintiff's mortgage had been duly filed and properly registered in the office of the county clerk of the proper court, of which appellant had constructive, but not actual, notice; that, before the filing of the suit, Martin had offered to pay the plaintiff the full balance of $65 due on the note executed contemporaneously with the mortgage; that the plaintiff had refused to receive the tender, because of the unpaid balance due on the first note; that at the time Martin purchased the Chrysler car he took actual possession of the same, and used it in his business as his own property until August 20, 1928, when it was sequestered by the plaintiff; that, after the car was sequestered by the sheriff, it was delivered to the plaintiff, who retained and still has possession of the same; that the car in question was of the reasonable market value of $400, and the reasonable value of its use from August 30, 1928, when sequestered, to the date of the trial, on November 24, 1928,

was $7.50 a day. As a matter of law, the court concluded that the plaintiff, Covington, was entitled to a judgment as against Martin, foreclosing his said chattel mortgage on the automobile mentioned for the sum of $269.83, and all costs of suit, and that Martin should recover nothing from Covington by virtue of his plea of intervention and cross-action.

We think the mortgage declared upon by appellee was valid, and that its terms are sufficiently comprehensive to secure the balance due on the previous note executed by Cates to Covington, and that therefore appellant's tender was insufficient. See 5 R. C. L., p. 420, § 50; Hoye v. Burford, 68 Ark. 256, 57 S. W. 795, by the Supreme Court of Arkansas, cited with approval in 1 Jones on Mortgages, p. 480, § 346.

The mortgage is dated May 14, 1927, and was filed for record May 21, 1927. Appellee's suit was filed on June 30, 1928, and the writ of sequestration sued out on the same day. Appellant alleges the conversion of the car as on August 30, 1928, that being the date as alleged when the car was taken out of his possession under the writ of sequestration. The affidavit for the writ alleged that the car was in possession of Cates, and it was feared that Cates would injure it. There is no finding that these allegations were false at the time the affidavit was made, and, generally speaking, without such proof, no recovery by defendant could be awarded under a mere allegation of a wrongful issuance of the writ. Under the statutes, appellee was given the legal right at the time of the institution of his suit, by making the proper affidavit and bond, to secure the issuance of the writ and have it executed, and in order for appellant to have recovered damages on that ground alone it was essential that he prove that the affidavit was false and the issuance of the writ unlawful.

Appellant's principal insistence, however, is to the effect that by virtue of his purchase he had the legal title to the car and an' interest in the sequestered automobile, which he had the right to protect, citing in support of this contention the case of Sabine Motor Co. v. English Auto Co. (Tex. Com. App.) 291 S. W. 1088. This may be conceded, but it is to be observed that the case cited is distinguishable in its facts from the one before us. In that case, briefly stated, the Sabine Motor Company sold an automobile, and the English Auto Company acquired it from the purchaser. Later the Sabine Motor Company sued on the purchaser's obligation to sell it and appropriate the proceeds, whereupon the English Motor Company sued as for a conversion of the car and obtained judgment therefor, which was upheld by the Commission of Appeals.

In the case before us, appellant, having legal title to the car by virtue of his purchase, had the right to its use, and upon its

sequestration had the election to treat the levy as a conversion, or to assert his right under title 125, Rev. St. 1925 (articles 7402–7425), affording the remedy of trying the right to the property, or, as he in fact did, intervene in the suit of appellee against Cates and set up his right. Having so elected to proceed and assert his claim and right, he is necessarily bound by the result, unless material error be shown in the proceedings. Lera v. Freiberg (Tex. Civ. App.) 22 S. W. 236; Moore v. Gammel, 13 Tex. 120.

As before observed, appellee, Covington, had the undoubted right to sue for the foreclosure of his mortgage, of which the court found that appellant had notice, and so far as the record shows this is all the court rendered judgment for. As to appellant's objection to the action of the court in permitting appellee to dismiss his suit as against Cates, it must be said that there is nothing in the record to show error in this respect. For aught the record discloses, Cates may at the time have been insolvent, or a nonresident, and the dismissal, hence, authorized under our statutes and procedure. No other material questions have been presented.

We accordingly conclude that appellant's assignments of error must be overruled and the judgment affirmed, upon the trial court's findings of fact and conclusions of law, which we adopt, adding, however, that, while no complaint thereof has been made, we notice that the judgment fails to require that the excess, if any, in the proceeds derived from the sale of the automobile over the amount necessary to discharge appellee's judgment, should be paid to appellant, and the judgment will be so reformed as to thus provide.

### On Motion for Rehearing.

Counsel for appellant have earnestly presented a motion for rehearing that has perhaps apparent force, and we think it not amiss, in deference to the earnestness of counsel, to again refer to the distinctions that we think exist between the case before us and that of Sabine Motor Co. v. English Auto Co. (Tex. Com. App.) 291 S. W. 1088, so strongly relied upon by appellant's able counsel. The English Auto Company, by means of its writ of sequestration, not only took from the possession of the Sabine Motor Company the cars in controversy, but also further proceeded to sell the cars and appropriate the proceeds. Here possession of the car in controversy was taken from appellant by an officer of the court, and not by appellee. True, it was delivered to appellee by the officer; but, for aught that the record shows, appellee held it for and in the right of the officer. There is no evidence or finding that he used or converted it in any way to his own benefit; the car in fact has never been sold, but is in esse and subject to the order of the court, which directed its sale and the applica-

tion of the proceeds to the payment of appellee's debt, with the excess paid to appellant. It is to be further noted that in the case appellant relies upon it does not appear, so far as we have been able to ascertain, that the mortgages held by the English Auto Company contained, as in the case before us, an express power conferred upon the mortgagee, Covington, to, "without demand of performance, remove, take possession of, and sell said chattels at public or private sale, without notice, at any place where found."

The validity and effect of such a provision is expressly recognized by the able judge who wrote the opinion in the case of Sabine Motor Co. v. English Auto Co. (Tex. Com. App.) 291 S. W. 1088, 1091. He there said:

"It goes without saying that a proper action in court cuts off the title of the mortgagor or his assigns. And our Supreme Court has recognized the validity of stipulations in mortgages authorizing the seizure and sale of mortgaged property without legal proceedings at all. See Harling v. Creech, 88 Tex. 300, 31 S. W. 357; Singer Sewing Machine Company v. Rios, 96 Tex. 174, 71 S. W. 275, 60 L. R. A. 143, 97 Am. St. Rep. 901. In the former case, Associate Justice Brown said: 'The instruments being chattel mortgages, the vendor had the rights of a mortgagee under a chattel mortgage containing the stipulations of right to take possession, * * * of the property if he deemed himself insecure, or the debt not being paid, and to hold or dispose of the property in the character of mortgagee, and not as owner. We answer the question, that under the law the instruments were chattel mortgages, and by their terms the defendant, Creech, had the right to take possession upon failure to pay or if he deemed himself insecure, but he had no right to convert the property to his own use. It was the property of the plaintiff, subject to the defendant's rights as mortgagee.'

"In the latter case Chief Justice Gaines, referring to the former case, said: 'So far we have not adverted to the case Harling v. Creech, 88 Tex. 300, 31 S. W. 357. In that case, in answering a certified question, this court, after construing the instrument in controversy to be a chattel mortgage, said: "The instruments being chattel mortgages, the vendor had the rights of a mortgagee under a chattel mortgage containing the stipulations of right to take possession, which would be to take possession of the property if he deemed himself insecure, or the debt not being paid, and to hold or dispose of the property in the character of mortgagee, and not as owner." It is claimed by counsel for appellee that this was a dictum. Without pausing to inquire whether the remark was called for in a decision of the question there certified, we deem it sufficient to say, that if a dictum, it is in our opinion a correct announcement of the law.' "

In the case from which we have just quoted, the Sabine Motor Company, the assignee of the mortgagor, was not a party to the suit of the English Auto Company, nor a party to the proceedings which resulted in the final conversion of the automobiles in that case involved. And if the appellee, Covington, had the lawful right under the terms of his mortgage to take possession without process, we fail to see how the taking by the officer under the authority of the writ of sequestration makes any substantial difference in the right of appellee to possession, it being conceded that an unpaid balance of indebtedness existed.

On the whole, we think the motion for rehearing must be overruled; and it is so ordered.