## William Cameron & Co. v. J. W. Hinton.

No. 748.   Decided March 6, 1899.

**1. Res Adjudicata—Mortgage—Sequestration—Replevin—Conversion.**

A judgment in a suit for foreclosure of a mortgage on personal property (which plaintiff in such suit sequestered, replevied, and sold) which did not foreclose upon such property, but credited the debt sued on and secured by the mortgage with the proceeds for which the property was so sold, was an adjudication of and bar to a subsequent suit by the mortgagee for conversion of the replevied property by the mortgagor. (P. 499.)

**2. Same.**

Such sale of the replevied property, though not provided for by the law, presents a case in which the court, having jurisdiction, may adjudicate the rights of the parties in accordance with the spirit of the statute, by crediting the debt with the value of the converted property in lieu of foreclosure upon it. (P. 500.)

**3. Estoppel—Mortgage—Foreclosure—Power of Sale—Inconsistent Remedies.**

A mortgagee who has obtained from the mortgagor authority to make a specific private sale of the property to a third party in order to avoid foreclosure proceedings, but who afterwards sued to foreclose, sequestered and replevied it, and then sold it as so authorized, can not plead the authority to make such contract as an estoppel against a subsequent suit by the mortgagor for converting the property; the remedies by the foreclosure and by private sale, being inconsistent, could not be resorted to at the same time. (P. 501.)

Certificate of dissent from the Court of Civil Appeals for the Second District, in an appeal from Baylor County.

*W. T. League* and *D. A. Holman,* for appellants.—If A have a mortgage on the property of B, and under instruction and authority of B, A sells the property to C, both A and B binding themselves that B will deliver it to C, if on B's refusal A sues to foreclose and sequesters the property, and afterwards, before trial, C demands the property of A under the contract, both A and B are estopped by their contract from re-

fusal to deliver to C, and if A deliver to C under the contract, B would be estopped from asserting claim against A for conversion or for damages beyond the contract price. Collins v. Cooper, 65 Texas, 461; Burleson v. Burleson, 28 Texas, 415; Scoby v. Sweatt, 28 Texas, 715; Lewis v. Castleman, 27 Texas, 407; 1 White & W. C. C., sec. 1051.

Having elected one of several remedies by action will not preclude him from abandoning such suit, dismissing the same, and afterwards adopting another remedy, especially if one is a statutory and the other a common law remedy. And under Texas practice he may by amendment abandon any part or all, and set up a new cause of action in whole or in part in the same suit as to same subject matter, and have it finally adjudicated. 1 Chitty on Plead., 16 ed., 234; 13 Law. Rep. Ann., 92, note and authorities cited; 23 Law. Rep. Ann., 231; 26 Law. Rep. Ann., 840; Mortgage Co. v. Peters, 72 Miss., 1058; State v. Snyder, 66 Texas, 696; Erskine v. Wilson, 27 Texas, 117; Lewis v. Davidson, 39 Texas, 660.

It is sufficient if the sale was essential to the former judgment, was put directly in issue and determined, or was fairly within the scope of the pleadings. Lee v. Kingsbury, 13 Texas, 71; Mynatt v. Hudson, 66 Texas, 66; 1 Greenl. on Ev., sec. 534; Philipowski v. Spencer, 63 Texas, 607; Monks v. McGrady, 71 Texas, 139; Foster v. Wells, 4 Texas, 103; Weathered v. Mays, 4 Texas, 388; Pishaway v. Runnels, 71 Texas, 352.

Abandonment of his plea by amendment after replication thereto asking adjudication and affirmative relief, in analogy to reconvention, will not avail him. Bradford v. Hamilton, 7 Texas, 55; Cunningham v. Wheatly, 21 Texas, 184; Ewell v. Anderson, 49 Texas, 697.

The issue of law tendered in plaintiff's exceptions in his last pleading as "to the sale and its adjudication" determined finally against him, is res adjudicata. Bomar v. Parker, 68 Texas, 437; Dixon v. Zadek, 59 Texas, 531; Mynatt v. Hudson, 66 Texas, 66; Parker v. Spencer, 61 Texas, 161.

If the judgment was erroneous or even voidable for fraud, as between the parties it is conclusive, until set aside by direct proceeding. Murchison v. White, 54 Texas, 78; Pelham v. Murray, 64 Texas, 478; Harn v. Phelps, 65 Texas, 592.

But plaintiff's plea of general denial puts the plaintiff upon proof of every material allegation in his petition, and gives the defendant liberty to introduce any rebutting or explanatory evidence, and he can not take advantage of his omission to do so. Tisdale v. Mitchell, 12 Texas, 70; Altgelt v. Emilienburg, 64 Texas, 150; Willis v. Hudson, 63 Texas, 681; Teal v. Terrell, 48 Texas, 491, and authorities cited; Freeman v. McAninch, 27 S. W. Rep., 99, and authorities cited; Rackley v. Fowlkes, 89 Texas, 613, and authorities cited.

*J. T. Montgomery,* for appellee.—The cause of action asserted by plaintiff in this suit, to wit, a breach of the replevy bonds, was a demand which he might have set up in said Tarrant County causes as a reconventional demand, or as a cross-action, but one which he was not bound to so plead,

and he not having pleaded it or asked any judgment upon it, the court had no power to litigate said cause of action in said causes in Tarrant County. Anderson v. Rogge, 28 S. W. Rep., 107; Freem. on Judg., sec. 277; Waterm. on Setoff, 631; Black on Judg., secs. 767, 566; Fifield, v. Edwards, 39 Mich., 264; Cromwell v. Sac County, 94 U. S., 351; Teal v. Terrell, 48 Texas, 508.

If a plaintiff in action voluntarily allows defendant a credit for an item for which defendant could have maintained an action in reconvention or an independent suit, such judgment is no bar to a suit by the defendant unless the amount credited was all that was due, or the full value of the article in payment for which the credit was allowed and is not res adjudicata of the abount due on value of such article. McWhorter v. Andrews, 13 S. W. Rep., 1099; Minor v. Walter 17 Mass., 237; McEwan v. Bigelow, 40 Mich., 215; Briggs v. Richmond, 10 Pick., 392; Freem. on Judg., sec. 280; 1 Van Fleet on Former Adjud., 507; Black on Judg., secs. 765, 767.

When the cause of action set up by plaintiff in a suit has not been adjudicated in a former suit between the parties, the judgment in the former suit is no bar unless it is made to appear that there was an issue in said former suit essential and necessary to the judgment therein rendered, which was decided against the plaintiff in the latter suit, and that it is essential to said plaintiff's recovery that said issue shall be decided contrary to its former adjudication. Black on Judg., sec. 614; Freem. on Judg., sec. 256.

The judgments of the District Court of Tarrant County are only conclusive of such matters as were essential to be determined before the judgment could be rendered, and not conclusive of any collateral issue or of any immaterial matter or of any matter which must be inferred from it. James v. James, 81 Texas, 381; Philipowski v. Spencer, 63 Texas, 607; Oldham v. McIver, 49 Texas, 572; Freem. on Judg., sec. 249.

Although a cause of action asserted in a second suit on an issue material to the second suit may have been involved in the pleadings in the first suit and evidence heard thereon, the judgment is no bar when the record discloses the fact that the former judgment was not based in whole or in part upon the cause of action asserted in the second suit or on the issue involved in the second suit, and in determining what was litigated in the former suit the court will look to the entire record, including the court's findings of fact and law. Pishaway v. Runnels, 71 Texas, 352; Teal v. Terrell, 48 Texas, 508; Philipowski v. Spencer, 63 Texas, 604; Legrande v. Rixey, 83 Va., 862; Railway v. New Orleans, 14 Fed. Rep., 373; 1 Freem. on Judg., 273; James v. James, 81 Texas, 380.

Res adjudicata can not be predicated on anything but a final judgment, and when under our practice exceptions are followed by a general denial, an order simply overruling an exception is not a final judgment, and the case stands as if no objection had been interposed, and in determining what was adjudicated, you can only look to the petition and general denial and judgment of the court and evidence, if necessary, to ex-

plain the issue decided. That final judgments only can be looked to: Black on Judg., sec. 509; Freem. on Judg., sec. 251; Van Fleet on Former Adjud., sec. 27. That order overruling an exception is interlocutory: Black on Judg., sec. 29; Freem. on Judg., secs. 12, 20. As to the office of a demurrer under our practice: Cooke v. Crawford, 1 Texas, 9; 60 Am. Dec., note, 431.

Cameron & Co. having sued appellee Hinton to foreclose a mortgage on the cattle and having alleged the title in appellee, and having caused the writ of sequestration to issue and the cattle to be seized thereunder, and having replevied them by giving bond favorable to Hinton, is estopped when sued on the bond from asserting that at the time of the levy of said writ and the execution of the bond that Hinton had no title to the property and that the title was in fact either in Cameron & Co. or Raynor, as their vendee. Levy v. Lee, 36 S. W. Rep., 309; White v. White, 34 Atl. Rep., 425; Kolsky v. Loveman, 12 So. Rep., 720; Van Winkle v. Crowell, 13 Sup. Ct. Rep. (U. S.), 20; Stamping Co. v. Oliver, 33 S. W. Rep., 689; Blum v. Gaines, 57 Texas, 139.

When a person has mortgage on personal property and the mortgagor for the purpose of preventing and saving cost of foreclosure agrees to deliver the property to the mortgagee or his vendee at an agreed price and afterwards refuses to carry out the agreement, the mortgagee has his election of remedies. He may either repudiate the new agreement and sue on his original mortgage for foreclosure, or he may bring suit to enforce the new agreement or for damage for its breach, but the election when once made is final and irrevocable. Bauman v. Jaffray, 6 Texas Civ. App., 495; Ward v. Green, 30 S. W. Rep., 864; Hicks v. Ross, 71 Texas, 358; White v. White, 34 Atl. Rep., 425; Crossman v Rubber Co., 13 Law. Rep. Ann., 91; Van Winkle v. Crowell, 146 U. S., 42; Herm. on Estop. and Res Adjud., secs. 1040, 1045, 1049, 1050, 1058, 1065.

The facts recited in the plea show that Cameron & Co., when Hinton refused to carry out the alleged agreement, had two remedies: first, to sue Hinton to enforce the agreement, or recover damages for its breach, or second, to abandon the agreement and foreclose their mortgage. They chose the latter and are thereby estopped, the remedies being inconsistent, from setting up the alleged contract when sued on their replevy bonds.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals has submitted to this court a certificate of dissent in the above entitled cause. From the opinion of the majority of the court and the briefs of the parties, we make the following staatement as the basis of our decision:

J. W. Hinton filed his suit in the District Court of Knox County, and afterwards the venue was changed to Baylor County, where it was tried before the court without a jury. The court gave judgment for Hinton, from which Wm. Cameron & Co. appealed. The majority of the Court of Civil Appeals entered judgment reversing the judgment of the

District Court and remanding the cause, from which Justice Hunter dissented.

Plaintiffs sought in this suit to recover of Wm. Cameron & Co. the value of certain cattle which he alleged Cameron & Co. caused to be seized by two writs of sequestration sued out of the District Court of Tarrant County in two separate suits, one entitled "Wm. Cameron & Co. v. H. G. Bedford and J. W. Hinton," No. 9991; the other, "Wm. Cameron & Co. v. J. W. Hinton," No. 10,090. It was alleged that in each of the said suits, after the writs of sequestration had been levied upon the cattle, the defendant Hinton failed to replevy the cattle within ten days, and that thereafter Wm. Cameron & Co. filed with the sheriff of Knox County in each case a replevy bond, whereupon the said sheriff delivered the cattle levied upon under each writ to the said Wm. Cameron & Co., which cattle the said Cameron & Co. had never returned to the sheriff nor to J. W. Hinton, to whom they belonged, but had converted them to their own use.

It was averred that the suit of Wm. Cameron & Co. v. H. G. Bedford and J. W. Hinton was based upon two promissory notes executed by the said Bedford and guaranteed by the said J. W. Hinton, and secured by a mortgage upon the cattle sequestered in that suit, and that the suit of Wm. Cameron & Co. v. J. W. Hinton was founded upon a note executed by J. W. Hinton and secured by a mortgage upon the cattle levied under the writ of sequestration issued in that case, all of the cattle being the property of Hinton. In each case the plaintiffs therein sought to recover judgment upon the notes sued upon and to foreclose the mortgage lien upon the cattle named therein. Other causes of action were set up in the petition in this suit and other facts alleged as the basis for recovering damages against the appellants, which are unnecessary to be stated here, as they have no bearing upon the questions certified.

To the petition of Hinton, Wm. Cameron & Co. pleaded, among other things, that the judgments of the District Court of Tarrant County, in each of the cases above stated, adjudicated and settled the matter as to the cattle that were seized under the writs of sequestration, and that the said judgments were a bar to this action so far as it sought to recover damages for the cattle seized in said proceeding. Cameron & Co. also pleaded the following facts as constituting an estoppel against plaintiff's prosecution of this suit.

The contents of the plea of estoppel are stated in the following extract from the opinion of a majority of the court:

"That prior to the institution of the suits by sequestration, Nos. 9991 and 10,090, J. W. Hinton had advised, counseled, and aided Wm. Cameron & Co. in making a contract for the sale to W. E. Raynor of the cattle subsequently sequestered and replevied; that at that time Cameron & Co. had a mortgage on all the cattle thus seized and replevied for the purchase price thereof; that by the terms of the mortgage, Wm. Cameron & Co. were authorized, upon the maturity of either of the obligations thereby secured, in the event of default by the mortgagor, to

take immediate possession of the incumbered cattle, and after giving the notice prescribed by the law as for sales under execution, to sell them; that thereupon Wm. Cameron & Co. notified J. W. Hinton that they would proceed to foreclose their mortgage upon the cattle; that Hinton then requested Wm. Cameron & Co. not to go to the expense of foreclosing the mortgage, authorized them to take possession of the cattle, and advised and consented to the private sale thereof by Cameron & Co.; that thereupon, prior to the institution of the suits above named, Cameron & Co., with the advice and consent of Hinton, entered into a contract for the sale of the cattle with W. E. Raynor; that the prices for the different grades and kinds of cattle were fixed and fully agreed upon by Raynor, Cameron & Co., and Hinton; that the latter agreed at the time to turn over the cattle to Raynor, and thereupon the contract was closed by Cameron & Co. with Raynor; that shortly thereafter Raynor demanded possession of the cattle from Hinton, which was refused by him; that thereafter Cameron & Co. instituted the suits for the debt and foreclosure of the mortgage, and fearing that defendants would remove the cattle from Knox County during the pendency of the suit, caused writs of sequestration to be issued and levied, replevying the same as already indicated; that after Cameron & Co. thus obtained possession of the cattle, Raynor demanded of them that they carry out their contract of sale with him; that for the purpose of avoiding responding to Raynor in damages for a breach of their contract, and under advice of counsel, and without intending to injure J. W. Hinton, they delivered the cattle to Raynor; that the prices received for the cattle were fair, reasonable, and just; that at that time and ever since Hinton was and has been insolvent. It had already been shown, under averments in the plea of res adjudicata that Hinton had received the benefits of this sale, by an application, by the Tarrant County Court, of the proceeds thereof to the mortgage indebtedness."

The plaintiff Hinton interposed special exceptions to the plea of estoppel, which, however, were practically a general demurrer, and presented the proposition that the facts alleged did not constitute an estoppel against Hinton, which exceptions were sustained by the court, and upon the trial the court overruled the defendant's plea of res adjudicata.

To sustain the plea of res adjudicata, the defendants introduced the following testimony: Certified copies of the record in the two cases in the District Court of Tarrant County, entitled "Wm. Cameron & Co. v. H. G. Bedford and J. W. Hinton," 9991, and "Wm. Cameron & Co. v. J. W. Hinton," 10,090. The record of those suits show practically the same facts, and one statement of the contents will be made as the contents of each. Wm. Cameron & Co. sought to recover of J. W. Hinton upon notes set out in the petitions and to foreclose mortgages upon cattle described therein, which were the property of J. W. Hinton, and in each case sued out a writ of sequestration directed to the sheriff of

Knox County, under which the sheriff of that county levied upon the cattle described in the writ as the property of J. W. Hinton and at the time in his possession. Hinton having failed to replevy within ten days, Wm. Cameron & Co. in each case replevied the cattle, giving bond conditioned as required by law.  In each case the defendant Hinton answered, and among other things alleged that Wm. Cameron & Co. had, since the replevy by them of the cattle, sold and converted them to their own use and would not be able to return the cattle according to their bond, claiming that for that reason the court should not foreclose the mortgage.   In each one of the cases, Wm. Cameron & Co. admitted that since they had replevied the cattle they had sold them to one Raynor, setting out the amount for which they were sold, which they alleged was the fair and reasonable market value of the cattle at the time.   They alleged further that they were sold under contract made by Hinton prior to the institution of the sequestration suits and that for the purpose of saving cost of foreclosure, etc., right to which had accrued, Hinton had agreed with Cameron & Co. that they might sell the cattle at private sale, and that with the consent and acquiescence of Hinton they had entered into the sale of the cattle to one Raynor for said price; that afterwards Hinton refused to deliver the cattle, whereupon Cameron & Co. brought the said sequestration proceedings and sequestered and replevied the cattle, and thereafter Raynor demanded that they carry out their contract, which they did in order to save a damage suit.   They alleged that Hinton was insolvent, and tendered in each case the amount received from Raynor for the cattle as a credit upon the notes sued on in that case, asking for a foreclosure of their mortgage upon the cattle which had not been seized by the writ, but did not ask for a foreclosure upon the cattle seized and replevied by them.

To the amended petition, the defendant Hinton in each case filed an amended answer, containing a general demurrer and special exceptions, which were overruled.   That plea in which he had before set up the sale of the cattle was omitted.   He filed a motion to quash the sequestration proceedings, which was also overruled.

In each of the original suits, William Cameron & Co. introduced evidence to sustain the allegations in their petition.   Hinton introduced no evidence.   The judge who tried the cases filed conclusions of fact and law in each.   From the conclusions of law in case 9991, Cameron & Co. v. Bedford and Hinton, we copy as follows: "(d) In this connection I will further state, that it is my opinion that the plaintiff had no right to dispose of the property as seized under the writ of sequestration, but the same having been done, the plaintiff's reasons having been set forth in his pleadings, which reasons were supported by proof, and there being no complaint of this action by plaintiff set up in defendants' answer, the defendants not setting up any claim to the property nor in any manner asserting their right thereto, and not in any manner asking for affirmative relief, the court is of the opinion that this irregularity on the part

of the plaintiff does not, under the facts, call for any proceeding or relief, except what is given by the judgment herein rendered."

From the conclusions of the court in No. 10,090, Cameron & Co. v. Hinton, we make the following extract: "That under the pleadings and evidence in this case the plaintiffs are entitled to recover the amount of the note sued on, less interest paid thereon as admitted in the petition, and less the proceeds of the sale of the property under the writ of sequestration, and to a foreclosure of lien as prayed for."

The questions certified are embraced in the following portion of the order of the Court of Civil Appeals: "The motion to certify the question of dissent is granted, and it is ordered that the matters of dissent be certified to the Supreme Court for decision, viz.: (1) Did the court err in overruling the defense of res adjudicata, under the facts and issues stated in the opinion of the majority herein filed? (2) Did the court err in sustaining exceptions to the plea of estoppel urged by the defendants Cameron & Co.?"

To the first question, we answer that the trial court erred in overruling the defense of res adjudicata.

The conclusiveness of the judgment pleaded by the defendants must be sustained upon the ground that the plaintiff had a right, independent of any action on the part of the defendant, to call upon the court to adjust the rights existing between them and the defendant on account of the sale of the property and the liability of Cameron & Co. to Hinton upon their replevy bond. The filing and withdrawal of the defendant Hinton's plea setting up the sale of the cattle and objecting to the foreclosure of the lien are immaterial in the consideration of this case, and we shall discuss it as if that plea had not been filed.

Counsel for defendant in error insist that the appellants voluntarily allowed a credit upon their demand against appellee, and that the judgment of the court for the balance of the debt does not conclude appellee as to the amount of the appellant's liability upon their replevy bond. To support this proposition, they cite McWhorter v. Andrews, 13 S. W. Rep., 1099; Minor v. Walter, 17 Mass., 236, and McEwen v. Bigelow, 40 Mich., 215. The proposition is sound and the authorities are apt and well selected, but the rule of law announced is not applicable to the facts of this case.

The validity of the mortgages was not controverted. After the cattle were sequestered, they remained subject to the lien, and the terms of the bond required that they should be returned for sale under the judgments to be rendered in case the debts and liens should be established. When Cameron & Co. sold and delivered the cattle to Raynor they became liable upon their replevy bond for the value of the property, which liability represented the property itself and was as much subject to the satisfaction of the debts, if established, as the property itself would have been if it had been returned for sale. The parties had the mutual right to have the value of the property applied to the payment of those debts,

and the District Court, having acquired jurisdiction of the matter, could adjust all of their rights in that suit.

By article 4876, Revised Statutes, the court is required, in case the plaintiff in sequestration proceedings establishes his claim and the defendant has replevied the property, to enter judgment against the defendant and his sureties upon his replevy bond for the value of the property replevied, and under article 4881, when the plaintiff in a sequestration suit has replevied the property and fails to establish his right, the court is required to enter judgment against the plaintiff and his sureties in favor of the defendant for the value of the property. Thus we see that the policy of the law is that when the court has once taken charge of the property, it shall preserve it, and upon the final determination of the case adjust the rights of the parties in relation thereto. The law does not provide for the manner in which the plaintiff may proceed in a case like this to secure the application of the proceeds of property replevied and sold by him to the satisfaction of the judgment recovered in such proceeding, but it is the spirit of the statute that in this case, as in the others, the judgment should settle the rights of the parties and that it should represent only that which remained after the application of the proceeds of the property seized and taken into the custody of the court.

In case of Holloway Seed Company v. City National Bank, 47 Southwestern Reporter, 95, this court held that, where it appears from the pleading that after the service of a writ of garnishment the garnishee had sold property subject to the writ, the court might, in that proceeding, give judgment for its value. This decision is based upon the fact that the garnishee has placed it beyond his power to obey the statutory judgment for the delivery of the property, and a court of equity will reach the adjustment by direct means instead of waiting for another suit. We think this analogous to the question before us in this case.

We can see no better method by which a proper adjustment can be accomplished than for the plaintiff who has converted the property, although wrongfully, to bring into the court the value of it and to ask the court to adjudicate upon his liability to the defendant for the value of the property, and when that liability has been determined, to subject it to the payment of the plaintiff's debt to the same extent that the property would be subject if it had been surrendered according to the bond. The fact that Cameron & Co. sold the property without authority from the defendant or the court does not change the rights of the parties in the proceeds from what they were in the property. Hinton had the right to have the property returned for sale or that Cameron & Co. should account for its value at the time, and when the latter proposed to account for its value, they were complying with the terms of the bond, and it became the duty of Hinton to protect his interest by presenting to the court evidence upon which it could determine whether the sum offered as the proceeds of the cattle was equivalent to their value at that time or not, and having failed to do so, he stands in the same attitude as

in any other case where the party fails to controvert an issue presented to him in court. He must answer then or hold his peace forever after.

The District Court did not err in sustaining the exceptions to the plea of estoppel. It presented no defense to this action. The allegations of the plea showed that Cameron & Co. had three remedies: (1) to sell the cattle at public outcry under the power contained in the deed of trust; (2) to sell to Raynor under the verbal authority from Hinton, and if a valid sale had been made, to enforce it against Hinton; (3) to foreclose the mortgages by suits. These remedies were inconsistent with each other and no two of them could be resorted to at the same time. When Cameron & Co. brought their suits to foreclose the mortgages, sequestered the property, and replevied it, they abandoned the agency created by the verbal authority from Hinton to sell it to Raynor, and thereafter their rights must be enforced under the suits for foreclosure. Ward v. Green, 88 Texas, 177.

After Cameron & Co. replevied the cattle they held them under their bond and under the obligation to return them to the officer to abide the judgment of the court. Their possession was no longer that of agents of Hinton and the sale which they made was without authority. They did not act upon the verbal authority of Hinton in selling to Raynor, and therefore can not invoke that as a protection to them for making the sale. When they abandoned their agency, Hinton was no longer bound by their acts. It is said in support of the plea of estoppel that Hinton received the benefit derived from the sale in the credit of the proceeds upon his debt. The receipt of benefits which will work an estoppel must be the voluntary act of the party to be bound and the application of funds by legal process can not operate as an estoppel upon a debtor.