**WITTHAUS et al. v. NATALI et al.**

No. 10287.

Court of Civil Appeals of Texas. Galveston.

June 3, 1937.

Rehearing Denied July 8, 1937.

W. J. Howard and Chas. C. McRae, both of Houston, for plaintiffs in error.

Carlos B. Masterson, Rucks & Enlow, and Follett & Hill, all of Angleton, and Conrad J. Landram, Pat N. Fahey, Walter C. Clemons, Wm. E. Loose, Lawler, Wood & Childress, and Ralph R. Wood, all of Houston, for defendants in error.

PLEASANTS, Chief Justice.

This is a suit in trespass to try title to recover the title and possession of a tract of land in the Manvel oil field, and damages for the conversion of oil, brought by plaintiffs in error against the defendants in error. Upon the trial in the court below without a jury judgment was rendered in favor of the defendants that plaintiffs take nothing by their suit. From this judgment plaintiffs in the suit prosecute this appeal. For brevity, the parties to this appeal will be hereinafter referred to as designated on the trial in the court below.

One of the plaintiffs, J. W. Hathaway, was in possession of the land as his homestead at the time of the sale thereof under a power of sale contained in a deed of trust executed by Max Witthaus and wife in favor of the Federal Land Bank at Houston. The other plaintiffs were Mrs. Mathilda Witthaus, now a widow, and her daughters, Esther W. Smith and Edna W. Keener, joined by their respective husbands. At the time of the sale by Max Witthaus and wife to Hathaway the land was occupied by them as their homestead, and in the deed of conveyance to Hathaway a one-sixteenth oil royalty in the land thereby conveyed was reserved.

The present claimant to the title and possession of this land, claiming under deed from Federal Land Bank as the purchaser at said trustee sale and holding adversely to these plaintiffs, is the defendant C. Natali, a merchant and former friend and neighbor of these plaintiffs, who was living at the time of the foreclosure

in the village of Manvel. This village was about two miles from Alvin, where the office of G. A. Barth, secretary and treasurer of the Alvin National Farm Loan Association, was located.

The claim of all the numerous defendants in the suit, whose names need not be here stated, is through and under defendant Natali. The Texas Pipe Line Company, a corporation, through whose pipe line the oil was run and disposed of, and the Federal Land Bank of Houston, as holder of the mortgage note, were also made parties defendant, and there was a tender in plaintiffs' pleadings to pay off and discharge this mortgage note to whoever the court might find entitled to any balance due on the note, with interest thereon.

The defendants claim title to the land in controversy under a sale made under a deed of trust executed by Max Witthaus and wife, who were admittedly the owners of the land, and under whom the plaintiffs claim.

At the time of this trustee's sale, as found by the court, the land in question was prospective oil land. There was an agreement as to common source of title.

It is not claimed that at the time of the attempted foreclosure under the deed of trust there was anything due to the mortgagee, the Federal Land Bank, on the note, either on principal or on interest. The sale was based wholly and entirely on an acceleration clause in the deed of trust with reference to the failure to pay taxes on the land. The plaintiffs claim that in this connection the attempted acceleration was illegal; that the trustee had no power to make the sale; that the sale thereunder was premature; and that for these reasons, as well as on account of the manner in which the sale was made, the sale was void, and the title to the mortgaged premises did not pass to the purchaser by the purported sale under the deed of trust.

Plaintiffs' first assignment of error presented in their brief as a proposition is as follows: "The power of sale to M. H. Gossett under the deed of trust from Max Witthaus to the Federal Land Bank of Houston had been suspended by the death of the mortgagor, Max Witthaus, eight months prior to the attempted sale under this deed of trust; the mortgagor, having died in Oklahoma and having left other property and other debts (as found by the trial court) the probate court of Brazoria County, in which county the land in question was situated, was the exclusive agency at that time through which sale of the land under this deed of trust could have been effectually made, and, therefore, this unauthorized sale by M. H. Gossett, Trustee, acting through G. A. Barth, as his agent and attorney in fact, was void and passed no title to the purchaser, the Federal Land Bank of Houston, and the court below erred is not so holding."

The record shows, and the trial court found, that the original mortgagor, Max Witthaus, the maker of the deed of trust in question, died intestate September 20, 1927, which was only eight months prior to the sale under the deed of trust in question by M. H. Gossett, trustee, to the Federal Land Bank of Houston on May 1, 1928. The court further found, while there was no administration on the estate of Max Witthaus, that there were other debts due by the estate of Max Witthaus than the debt in question, and other property belonging to this estate than the mortgaged land in question. There was no attempt whatever made by the defendants claiming under this trustee's sale to show that administration on the estate of Max Witthaus was unnecessary at the time of this trustee's sale, or unnecessary within the period of four years after the death of the mortgagor, Max Witthaus.

The uncontroverted evidence further shows that the estate of Max Witthaus at the time of the sale owned a one-sixteenth royalty or mineral interest in the land. This was served in the deed from Max Witthaus to J. W. Hathaway.

We think the assignment of error above set out should be sustained.

In the old case of Robertson's Adm'x v. Paul, 16 Tex. 472, was announced the general rule that has been consistently adhered to by our Supreme Court that the death of the mortgagor suspended the power of sale by a trustee, and that a mortgagee in this state must procure authority for the enforcement of his lien within the four-year period after the death of the mortgagor during which the estate was subject to administration. Buchanan, Administrator, et al. v. Monroe et al., 22 Tex. 537. There was no break in a long line of authorities sustaining the general rule laid down in Robertson's Adm'x v. Paul for a number of years. In 4 Ann.Cas. page 59, notes, and notes in 56 A.L.R. Annotated, page 230, the Texas rule is stated as follows: "It is true that in some instances sales made by

the trustee after the death of the mortgagor have been upheld, but this has been the decision only in these cases where there had been, and by reason of lapse of time could be, no administration. Heirs of Rogers v. Watson (1891) 81 Tex. 400, 17 S.W. 29; Swearingen v. Williams (1902) 28 Tex.Civ.App. 559, 67 S.W. 1061; Texas Loan Agency v. Dingee (1903) 33 Tex. Civ.App. 118, 75 S.W. 866."

In section 135, 29 Tex.Jur. p. 972, the rule is thus stated: "According to some of the authorities, the power conferred by a mortgage or deed of trust is a power coupled with an interest, and it continues in force after the death of the mortgagor or grantor. Other decisions hold that the death of the grantor revokes the power. At an early date the Supreme Court held that, although the death of the maker of a trust deed does not revoke the power to sell, yet its exercise by the trustee would be inconsistent with the statutes governing the administration of the estates of deceased persons, and that, whatever rights may be secured to the creditor by virtue of the deed, enforcement thereof can be had only through the courts."

In 1910, however, our Supreme Court, in Wiener v. Zweib, 105 Tex. 262, 141 S.W. 771, 781, 147 S.W. 867, Justice Ramsey dissenting, sustained a holding by the San Antonio Court of Civil Appeals that a sale made by a trustee after the death of the mortgagor and before the time for taking out administration had expired was voidable but not void, and, when there is no administration taken out within the four years, the sale is valid. On motion for rehearing, 105 Tex. 281, 147 S.W. 867, the majority of the court in an opinion by Chief Justice Brown overruled the motion, while expressing doubt as to the soundness of their former opinion, affirmed the judgment of the Court of Appeals, on the ground that the property sold by the trustee, being a homestead and reserved from forced sale by the Constitution (article 16, § 50), was not subject to the orders of the probate or district court in course of administration. In the original opinion in that case the court finds that the record indicated no necessity for an administration, and that the record contains no facts showing a necessity for an administration on the estate of Henry Wiener; or that there was existing any creditor who might have demanded such administration. From these findings it is manifest that the holding

in the Wiener Case does not support appellee's contention in the instant case.

The findings above quoted present the only answer that could be made to the logic of Justice Ramsey's opinion in the Wiener Case, from which we here quote: "This view is further aided, it seems to me, by the fact that many persons besides the grantor in the trust deed and the creditors to be secured by it are interested in the sale of the property and the sums realized therefrom. Any creditor having no lien would undoubtedly be entitled to any surplus remaining after the satisfaction of the mortgage, and the heirs at law would be entitled to recover and receive any surplus after the payment of all debts. Who would bid at a sale made under circumstances under which this one was made, when it might be annulled by the opening of an administration? Such a sale would result in a needless and useless sacrifice of debtor's property. Again, in this case, who would be entitled to possession of the property pending the running of the three years yet to elapse before the right to an administration? Who would be entitled to the rents and profits of such property? To sustain such a rule, it seems to me, ought not to be the rule in this state. Its indorsement is not necessary to the security of the creditor, who can, through the orderly processes of the probate court, obtain an allowance of his debt, and by a sale of the pledged property obtain title thereto or satisfaction thereon. To sustain the sale holds the title to the property in suspense, and makes its validity depend, not on the facts as they existed when it was made, but as they may exist by action or inaction of other persons three years after the time the sale had been made. It results that the sale is held in a state of suspended animation and the property in a qualified legal cold storage, until the four years shall elapse, and then it blossoms forth into fullblown strength, beauty, and effectiveness. Clearly, if the power of sale was suspended, the sale had thereunder was likewise suspended."

It is admitted that the land in question in this case had, long prior to the trustee's sale, ceased to be the homestead of Mrs. Witthaus and her daughter. It cannot be doubted that whatever equity Witthaus may have had in this property at the time of his death immediately vested in his heirs subject to payment of debts against the estate, and these debts could only have been classi-

fied and adjudicated legally by administration of the estate in the probate court.

Upon this record it seems clear to us that the title to the property in question is in plaintiffs, and the judgment of the trial court vesting the title in defendants should be reversed and here rendered in plaintiffs' favor.

Because of the conflicting claims of the parties as to their respective interests in the oil that has been produced and sold from the land, and as to the amount due upon the mortgage indebtedness for which defendant sold the land under his trust deed, no judgment can be rendered upon such claims, and these conflicting issues require that the cause be remanded for their adjudication in accordance with instructions of this court incorporated in the judgment.

The construction we have placed upon our Constitution and Statutes upon the question of the validity of the trustee's sale of the land in controversy finds support in opinions which have been delivered by our Supreme and appellate courts subsequent to the opinion of Chief Justice Brown in the Wiener Case, supra. These opinions are found, respectively, in the following cases: Faulkner v. Reed (Tex. Com.App.) 241 S.W. 1002; Youngs v. Youngs (Tex.Com.App.) 26 S.W.(2d) 191; Lawrie v. Miller (Tex.Com.App.) 45 S.W. (2d) 172; Fischer v. Britton, 125 Tex. 505, 83 S.W.(2d) 305, and cases therein cited; Federal Land Bank v. Tarter (Tex.Civ. App.) 86 S.W.(2d) 523; Wylie v. Hays, 114 Tex. 46, 263 S.W. 563, 569, 570.

By their second and third assignments plaintiffs assail the judgment on the following grounds:

█ The second assignment is, in substance, that even if the trustee's sale under the facts shown by the record as before set out should not be held void as to the whole of the property in controversy, it must be so held as to the one-sixteenth mineral interest in the land reserved by Max Witthaus in his deed to Hathaway, which was owned by Witthaus at the time of his death. This assignment seems so obviously sound that it is sustained without discussion.

██ The third assignment is, in substance, that the filing by the Federal Land Bank in 1927 of a cross-action in a suit filed by the state against said bank, Max Witthaus, and J. W. Hathaway, in which cross-action the bank sought to recover the taxes due on the property for the years from 1922 to 1926, with eight per cent. interest thereon from the date of payment thereof by the bank, and foreclosure therefor against the property in controversy, which cross-action was pending at the time of the sale by the trustee, the pendency of such suit estopped the bank from accelerating plaintiffs' debt because of the nonpayment of these taxes, and the sale by the trustee was therefore void. We think this assignment should be sustained.

In the case of Gandy v. Cameron State Bank (Tex.Civ.App.) 2 S.W.(2d) 971, 973, this rule of estoppel is thus stated: "While there is some diversity of view among the decisions of other states upon the subject, the holding in this state is that judicial foreclosure and foreclosure under a power are remedies which cannot be prosecuted concurrently, and institution of the former constitutes an election of remedies and precludes subsequent resort to the latter. Cameron v. Hinton, 92 Tex. 492, 49 S.W. 1047 [1048]; Sabine Co. v. English Co. (Tex.Com.App.) 291 S.W. 1088; Avery & Sons v. Loan Agency (Tex.Civ.App.) 62 S.W. 793; Holland Texas Hypotheek Bank v. Broocks (Tex.Civ.App.) 266 S.W. 183; Neill v. Johnson (Tex.Civ.App.) 234 S.W. 147." See, also, Corpus Juris, vol. 20, p. 38.

It would unnecessarily extend this opinion to set out and discuss other grounds of estoppel against the bank for accelerating the plaintiffs' entire indebtedness, because of the default in the payment of the taxes on the land. It is sufficient to say that, in our opinion, all the grounds of estoppel presented in the brief should be sustained.

It follows, as we have before said, that the judgment should be reversed and rendered in part, and in part reversed and remanded, with instructions, and it is so ordered.

Reversed and rendered in part; reversed and remanded, with instructions, in part.

CODY, J., did not sit.